UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

| | |
|---|---|
| RANDY L. GAINEY AND ANGIE J. GAINEY, | CASE NO. 10-03804-NPO |
| DEBTORS. | CHAPTER 7 |
| UNITED STATES TRUSTEE | PLAINTIFF |
| VS. | ADV. PROC. NO. 11-00039-NPO |
| RANDY L. GAINEY AND ANGIE J. GAINEY | DEFENDANTS |

MEMORANDUM OPINION AND ORDER ON UNITED STATES
TRUSTEE'S COMPLAINT OBJECTING TO DISCHARGE

There came on for trial on January 25, 2012 (the "Trial"), the United States Trustee's Complaint Objecting to Discharge (the "Complaint") (Adv. Dkt. No. 1)[1] filed by Henry G. Hobbs, Jr., Acting United States Trustee for Region 5 (the "UST"), and the Defendants' Answer and Affirmative Defenses to United States Trustee's Complaint Objecting to Discharge (Adv. Dkt. No. 4) filed by the Debtors, Randy L. Gainey and Angie J. Gainey (together, the "Gaineys"), in the above-referenced adversary proceeding (the "Adversary"). The Amended Pretrial Order ("Pretrial Order") (Adv. Dkt. No. 29) was approved by the Court on January 19, 2012.

At Trial, Ronald H. McAlpin ("McAlpin") represented the UST, and Mark K. Tullos represented the Gaineys. By stipulation, the UST introduced into evidence nine exhibits. In addition, the UST called five witnesses: Eileen N. Shaffer ("Shaffer"), the duly appointed chapter

---

[1] Unless stated otherwise, citations to the record are as follows: (1) citations to docket entries in the adversary proceeding, Adv. Proc. No. 11-00039-NPO, are cited as "(Adv. Dkt. No. ___)"; and (2) citations to docket entries in the main bankruptcy case, Case No. 10-03804-NPO, are cited as "(Dkt. No. ___)."

7 trustee assigned to the Gaineys' bankruptcy case; William Eugene Boone ("Boone"); Randy L. Gainey ("Mr. Gainey"); Angie J. Gainey ("Mrs. Gainey"); and Maria T. Baronich, Bankruptcy Analyst, Office of the UST. The Gaineys did not offer any exhibits into evidence and did not call any witnesses. At issue in the Adversary is whether the Gaineys should be denied a discharge of their debts pursuant to either 11 U.S.C. § 727(a)(2)[2] or § 727(a)(4)(A).[3] The Court, having considered the pleadings, evidence, and arguments of counsel, finds that the Gaineys should be denied their discharge pursuant to § 727(a)(4)(A) for the reasons set forth below.[4]

## Jurisdiction

This Court has jurisdiction over the parties and the subject matter of this Adversary pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and 28 U.S.C. § 157(b)(2)(J). Notice of the Trial was proper under the circumstances.

## Facts

The following facts are derived from the stipulations included in the Pretrial Order, as well as from the evidence presented at the Trial.

1. Mr. Gainey is an electrician and owns two businesses, Gainey's Electrical and Poultry

---

[2] *See* infra note 17.

[3] Hereinafter, all code sections refer to the United States Bankruptcy Code found at Title 11 of the United States Code unless otherwise noted.

[4] Pursuant to Federal Rule of Civil Procedure 52, as made applicable to this Adversary by Federal Rule of Bankruptcy Procedure 7052, the following constitutes the findings of fact and conclusions of law of the Court.

Wiring Direct.[5] Mrs. Gainey assists Mr. Gainey in his businesses by managing the books.[6] She also ran a chicken farm adjacent to the Gaineys' home until the bank foreclosed on the property in 2008.[7] Mrs. Gainey holds a bachelor's degree from Belhaven University and is currently pursuing her masters degree in business administration while working at the Mississippi State Department of Health.[8]

**Commencement of the Gaineys' Bankruptcy Case**

2.  On October 28, 2010, the Gaineys commenced this bankruptcy case by filing a voluntary petition for relief under chapter 7 of the United States Bankruptcy Code (the "Petition") due to the loss of their chicken farm and a downturn in Mr. Gainey's electrical businesses. (Dkt. No. 1).

3.  Along with the Petition, the Gaineys also filed their verified schedules on October 28, 2010 (the "Original Schedules"). (Dkt. No. 3) (UST Ex. 1). On Schedule B - Personal Property, Item 26 of the Original Schedules, the Gaineys were asked to list any "[b]oats, motors, and accessories" in which they had an interest. They placed an "x" in the column labeled "None." However, when the Petition and Original Schedules were filed, the Gaineys actually owned: (1) a 2003 17' Tracker Marine Boat ("Marine Boat") with a Fischer Trailer; (2) a 2006 24' Crest Pontoon Boat ("Pontoon Boat") with a Roadrunner Trailer; and (3) two jet skis with a double Dixie Craft

---

[5] Test. of Mr. Gainey at 10:40:39 - 10:40:51. The Trial was not transcribed. References to testimony are cited by the timestamp of the audio recording.

[6] Id. at 10:59:54 - 11:00:10.

[7] Id. at 10:42:11 - 10:42:42.

[8] Test. of Mrs. Gainey at 11:20:35 - 11:21:30.

Trailer (together, the "Subject Property").[9]

4.  On December 1, 2010, the Gaineys' bankruptcy case was selected for audit by the UST. (UST Ex. 9).

5.  On December 16, 2010,[10] the Gaineys testified under oath at their § 341 Meeting of Creditors ("§ 341 Meeting") that the Original Schedules disclosed all of their assets and liabilities and that they were unaware of any errors or omissions in these documents. (UST Ex. 9).

6.  Based upon the Gaineys' testimony at their § 341 Meeting, Shaffer filed a Chapter 7 Trustee's Report of No Distribution.[11]

**Gaineys' First Amendment to their Bankruptcy Schedules**

7.  On February 11, 2011, McAlpin sent an email ("McAlpin's Email") to Edwin Tullos, the Gaineys' bankruptcy attorney,[12] stating that, "[the UST] ha[s] received a Report of Debtor Audit which indicates the subject Debtors failed to disclose their interest in a [Marine Boat] and a 2007 11' Kawasaki Jet Ski" ("Kawasaki Jet Ski"). (UST Ex. 2).

8.  The Gaineys amended the Original Schedules (the "First Amended Schedules") (Dkt. No. 29) (UST Ex. 4) on February 24, 2011. On Schedule B - Personal Property, Item 26 of the First Amended Schedules, the Gaineys were asked for the second time to list any "[b]oats, motors, and accessories" in which they had an interest. This time, the Gaineys listed the Marine Boat and

---

[9] Test. of Mr.Gainey at 10:44:29 - 10:44:53.

[10] There is some discrepancy in the record as to whether the Gaineys' § 341 Meeting of Creditors occurred on December 15, 2010, or December 16, 2010. This minor discrepancy is irrelevant to the Court's decision.

[11] Test. of Shaffer at 10:12:45 - 10:13:30.

[12] As previously noted, Mark K. Tullos represented the Gaineys at Trial.

Kawasaki Jet Ski, which had been mentioned previously in McAlpin's Email, but not the Pontoon Boat or the second jet ski.

**Gaineys' Second Amendment to their Bankruptcy Schedules**

9. The UST conducted an examination under Rule 2004 of the Federal Rules of Bankruptcy Procedure ("2004 Exam") of the Gaineys on March 29, 2011.[13] (UST Ex. 9). At the 2004 Exam, when Mr Gainey was asked how many jet skis the Gaineys owned, he replied that they owned only one. When Mr. Gainey was specifically questioned about his interest in a second jet ski, he admitted that he had two jet skis but stated that one of the jet skis belonged to his daughter.[14] At the end of the 2004 Exam, the UST asked Mr. Gainey if he owned any other real or personal property. Mr. Gainey responded that he owned a "junk pontoon boat."[15]

10. On April 15, 2011, the UST commenced this Adversary by filing the Complaint.[16] In the Complaint, the UST seeks denial of the Gaineys' discharge pursuant to § 727(a)(2) and

---

[13] There is some discrepancy in the record as to whether the Gaineys' 2004 Exam occurred on March 29, 2011, or March 30, 2011. This minor discrepancy is irrelevant to the Court's decision in the Adversary.

[14] See infra note 18.

[15] Test. of Mr. Gainey at 11:15:55 - 11:19:19.

[16] In a chapter 7 case, the time within which to object to the debtor's discharge under § 727(a) is sixty (60) days from the date first set for the debtor's meeting of creditors under § 341. FED. R. BANKR. P. 4004(a). An extension of the original sixty (60) days can be made "[o]n motion of any party in interest, after notice and hearing." FED. R. BANKR. P. 4004(b)(1). On February 18, 2011, the Order Granting United States Trustee's Motion for Extension of Time to Object to Discharge (Adv. Dkt. No. 25) was entered. Thus, the Complaint was filed timely.

§ 727(a)(4)(A).[17]

11.     On May 20, 2011, the Gaineys again amended their schedules (the "Second Amended Schedules"). (Dkt. No. 51) (UST Ex. 5). On Schedule B - Personal Property, Item 26 of the Second Amended Schedules, the Gaineys were asked for a third time to list any "[b]oats, motors, and accessories" in which they had an interest. The Gaineys again listed the Marine Boat and Kawasaki Jet Ski. In addition, the Gaineys included the Pontoon Boat, which they valued at $1,000.00, and an "unidentified [j]et [s]ki (owned by daughter),"[18] which they also valued at $1,000.00, both of which were revealed by the Gaineys at their 2004 Exam.

**Sale of the Subject Property**

12.     Once the Subject Property was brought to Shaffer's attention by the UST, Shaffer filed an Amended Application of Trustee to Employ Auctioneer, Approval of Auction Contract and for the Approval of the Sale of Property, Free and Clear of Liens (the "Application") (Dkt. No. 48). The Application was unopposed and an Order Approving Amended Application of Trustee to Employ Auctioneer, Approval of Auction Contract and for Approval of the Sale of Property, Free

---

[17] The UST has consistently asserted that he is seeking denial of the Gaineys' discharge pursuant to § 727(a)(4)(A) and § 727(a)(2). In citing the specific subsection under § 727(a)(2), the UST, however, alternates between § 727(a)(2)(A) and § 727(a)(2)(B). In the Pretrial Order and at Trial, the UST indicated that he is proceeding under § 727(a)(2)(A). However, in the Complaint and in both the Defendants' Proposed Findings of Fact and Conclusions of Law and the United States Trustees' Proposed Findings of Fact and Conclusions of Law, the UST seeks relief under § 727(a)(2)(B), rather than § 727(a)(2)(A). As the Court finds that the Gaineys should be denied their discharge pursuant to § 727(a)(4)(A), it is unnecessary for the Court to consider whether grounds also exist for denial of a discharge under either § 727(a)(2)(A) or § 727(a)(2)(B).

[18] Although the Gaineys' Second Amended Schedules listed one of the jet skis as an "unidentified [j]et [s]ki (owned by daughter)," Gaineys' counsel admitted at Trial that the Gaineys owned both jet skis.

and Clear of Liens (Dkt. No. 52) was entered on June 6, 2011.[19]

14.    Thereafter, Shaffer employed Taylor Auction & Realty, Inc. ("Taylor Auction") to sell the Subject Property.[20]  After the sale, Shaffer filed an Auctioneer's Report of Sale (the "Auctioneer's Report") (Dkt. No. 54) (UST Ex. 7) on July 1, 2011, which was also unopposed. The Auctioneer's Report states the gross sales for the Subject Property were: (1) $13,200.00 for the Pontoon Boat; (2) $6,100.00 for the two jet skis; and (3) $3,700.00 for the Marine Boat.[21]

**Pontoon Boat**

14.    As part of the Adversary, the Gaineys were deposed on October 3, 2011. (UST Ex. 9).  During his deposition, Mr. Gainey failed to mention any attempt to sell the Subject Property prior to filing the Petition.  To the contrary, Mrs. Gainey recalled during her deposition that Mr. Gainey had attempted to sell the Pontoon Boat to Boone.[22]

15.    At Trial, the UST called Boone to testify.[23]  Boone testified that he offered to purchase the Pontoon Boat in late May, 2010, for $17,500.00.  Thereafter, Boone took out a loan and wrote Mr. Gainey a check for the full purchase price.  Boone and Mr. Gainey agreed that before the sale transaction was completed, Boone would take the Pontoon Boat out to the reservoir to ensure it was working properly.  Boone took the Pontoon Boat out to the reservoir over the Memorial Day

---

[19] Test. of Shaffer at 10:13:30 - 10:15:36.

[20] Id. at 10:15:05 - 10:15:11.

[21] Id. at 10:15:11 - 10:16:41.

[22] Test. of Mrs. Gainey at 11:27:54 - 11:28:08.

[23] The following events occurred just over five months prior to the Gaineys commencing their bankruptcy case.

Weekend, 2010. On two separate occasions over the Memorial Day Weekend, Boone attempted to use the Pontoon Boat, but was unable to do so due to mechanical problems. Boone consulted Mr. Gainey, who was also at the reservoir that weekend, about the mechanical problems with the Pontoon Boat. Mr. Gainey told Boone to take the Pontoon Boat to RJ's Outboard Service to inquire about having it repaired. After learning that the Pontoon Boat had a bad engine, Mr. Gainey returned Boone's check and the transaction was never completed.[24]

16. The UST also called Mr. Gainey to testify. Mr. Gainey testified that sometime after the transaction with Boone fell through, and prior to the commencement of the Gaineys' bankruptcy case, he attempted to sell the Pontoon Boat for $10,000.00 through a popular Internet website for classified listings. It was unclear from his testimony whether Mr. Gainey ever received any offers for the Pontoon Boat through the website.[25]

## Discussion

In the Complaint, the UST asserts that the Gaineys are not entitled to a discharge pursuant to either § 727(a)(2)[26] or § 727(a)(4)(A). Any debtor who seeks relief under chapter 7 should be granted a discharge unless one of the reasons for the denial of a discharge under § 727(a) is proven by an objecting party by a preponderance of the evidence. See Kontrick v. Ryan, 540 U.S. 443, 447 (2004); FED. R. BANK. P. 4005. "The provisions denying a discharge to a debtor are generally construed liberally in favor of the debtor." 6 COLLIER ON BANKRUPTCY ¶ 727.01[4] (16th ed. 2011). "A party objecting to discharge need only prove one of the grounds for non-dischargeability under

---

[24] Test. of Boone at 10:28:03 - 10:36:05.

[25] Test. of Mr. Gainey at 10:56:21 - 10:56:47; 11:08:59 - 11:09:52

[26] See supra note 17.

§ 727(a) because the provisions of § 727(a) are phrased in the disjunctive." Farouki v. Emirates Bank Int'l, Ltd., 14 F.3d 244, 250 (4th Cir. 1994). If the objecting party, here the UST, is successful in proving any one of the § 727(a) grounds for denial of discharge, the debtor is denied a discharge of all of his debts. 6 COLLIER ON BANKRUPTCY ¶ 727.01[4] (16th ed. 2011).

**Section 727(a)(4)(A)**

Section 727(a)(4)(A) provides that a debtor will not be granted a discharge if "the debtor knowingly and fraudulently, in or in connection with the case. . .made a false oath or account." In short, "[s]ection conditions the debtor's discharge on his truthfulness." Cadle Co. v. Duncan (In re Duncan), 562 F.3d 688, 695 (5th Cir. 2009). Thus, a debtor who makes a false oath in connection with his bankruptcy case may be denied his discharge pursuant to § 727(a)(4). See Baum v. U.S. Trustee (In re Baum), 248 Fed. Appx. 599, 604 (5th Cir. 2007). A party objecting to a discharge under § 727(a)(4)(A) must show: (1) the debtor made a statement under oath, (2) the statement was false, (3) the debtor knew the statement was false, (4) the debtor made the statement with fraudulent intent, and (5) the statement was material to the bankruptcy case. Beaubouef v. Beaubouef (In re Beaubouef), 966 F.2d 174, 178 (5th Cir. 1992).

The false oath contemplated by § 727(a)(4)(A) applies to actions taken "in or in connection with the case," such as when the debtor makes a false statement, for example, in his verified schedules, at his § 341 Meeting, or at his 2004 Exam. Id. at 177. Further, "[a]n omission of an asset can constitute a false oath." Cadle Co. v. Pratt (In re Pratt), 411 F.3d 561, 566 (5th Cir. 2005). A debtor has a continuing duty throughout his bankruptcy case to disclose all of his assets in his schedules. Gebhardt v. Gartner (In re Gartner), 326 B.R. 357, 367 (Bankr. S.D. Tex. 2005).

There is no dispute in the instant case that the Gaineys failed to include any of the Subject

Property in the Original Schedules. Yet, the Gaineys testified under oath at their § 341 Meeting that the Original Schedules disclosed all of their assets and liabilities and that they were unaware of any errors or omissions in these documents. It was only after receipt of McAlpin's Email informing Gaineys' counsel that the "Debtors failed to disclose their interest in a [Marine Boat] and a [Kawasaki Jet Ski]" that the Gaineys chose to amend their schedules to include their interest in those two items, but only in those two items. This event alone should have prompted the Gaineys to be forthcoming about the remaining Subject Property. However, it was not until nearly two months after the 2004 Exam, and one month after the Adversary was initiated, that the Gaineys amended their schedules for a second time to disclose the Pontoon Boat and "unidentified [j]et [s]ki (owned by daughter)."[27] By then, the Gaineys knew that the UST was already aware of the existence of all of the Subject Property.

      The omission of the Subject Property from the schedules of the Gaineys does not end the discharge inquiry. A debtor should be granted his discharge when an omission is made "by honest mistake." Fox v. Ridgway (In re Ridgway), No. 10-00088-DWH, 2011 WL 5509156, *15 (Bankr. S.D. Miss. Nov. 10, 2011), *citing* 4 COLLIER ON BANKRUPTCY ¶ 727.04[1A] (15th ed. 1992). To determine whether the debtor's actions were honest, the Court may consider circumstantial evidence to infer fraudulent intent or reckless disregard for the truth from the debtor's actions. Cadle Co. v. Duncan (In re Duncan), 562 F.3d 688, 695 (5th Cir. 2009), *citing* In re Sholdra, 249 F.3d at 382 (5th Cir. 2001). "[T]he Fifth Circuit [has] held that there [is] sufficient evidence of the debtor's reckless indifference to the truth based on 'the existence of more than one falsehood, together with [the debtor]'s failure to take advantage of the opportunity to clear up all inconsistencies and omissions

---

[27] *See* supra note 18.

when he filed his amended [s]chedules.'" Gartner, 326 B.R. at 367, *quoting* Beaubouef, 966 F.2d at 178 (holding debtor demonstrated his reckless indifference to the truth by failing to give full and complete disclosures of his assets in both his initial and amended schedules and statements of financial affairs).

At Trial, the Gaineys insisted they did not intentionally omit the Subject Property from their schedules. The Court does not find Gaineys' testimony credible for several reasons.[28] First, the Court finds it difficult to believe that items as large as two jet skis, a Marine Boat, and a Pontoon Boat could simply slip the Gaineys' minds. Photographs of the Subject Property introduced into evidence at Trial clearly make this point. (UST Ex. 6). Second, it was not as though they were asked to list all of their personal property in general. Schedule B - Personal Property, Item 26 specifically asked the Gaineys to list their interest in any "[b]oats, motors, and accessories." Third, even assuming for the sake of argument that the Gaineys did forget that they owned the Subject Property when they filed the Original Schedules and during their § 341 Meeting, McAlpin's Email should have prompted the Gaineys to be forthcoming in their First Amended Schedules about all of the remaining items they failed to list in the Original Schedules, in particular all of their "[b]oats, motors, and accessories." It is especially troubling to the Court that the Gaineys failed to mention the second "unidentified [j]et [s]ki (owned by daughter)"[29] in the First Amended Schedules as it was stored on the same trailer as the Kawasaki Jet Ski. The Gaineys were given another opportunity to be candid during their 2004 Exam; however, the Gaineys again failed to mention other assets they

---

[28] The Court notes that the Gaineys are well-educated and have either run their own businesses or have held responsible positions in their workplaces. *See* supra p. 2-3, ¶ 1.

[29] *See* supra note 18.

omitted from the Original Schedules and the First Amended Schedules until McAlpin specifically inquired as to whether the Gaineys owned a second jet ski. It was then, and only then, that Mr. Gainey admitted that he possessed a second jet ski which he initially claimed belonged to his daughter. At Trial, the Gaineys' attorney admitted that ownership of the second jet ski was not at issue and the Gaineys were in fact its owners.

It was not until the Gaineys were deposed as part of the Adversary that Mrs. Gainey admitted that they had attempted to sell the Pontoon Boat only five months before filing the Petition. Both the Gaineys failed to mention either of their attempts to sell the Pontoon Boat at their § 341 Meeting, which occurred approximately six months after the attempted sale to Boone, or at their 2004 Exam, which occurred only approximately ten (10) months thereafter. At his deposition, Mr. Gainey again failed to disclose this information. At Trial, Mr. Gainey did finally admit that he attempted to sell the Pontoon Boat to Boone for $17,500.00 around Memorial Day Weekend, 2010, but the transaction fell through as there were mechanical problems with the boat. Additionally, Mr. Gainey also admitted at Trial that he attempted to sell the Pontoon Boat on an Internet website for $10,000.00 sometime thereafter.[30] The Gaineys' series of omissions and partial disclosures demonstrate that they "knowingly and fraudulently. . . made a false oath."

As to the last element necessary to prove a claim under § 727(a)(4)(A), '[t]he subject matter of a false oath is material, and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's. . . estate." Beaubouef, 966 F.2d at 178, quoting Chalik v. Moorefield (In re Chalik), 748 F.2d 616, 617 (11th Cir. 1984) (internal quotations omitted). Whether the debtor believes the assets

---

[30] As further evidence of the Gaineys failure to be truthful, they listed the Pontoon Boat in the Second Amended Schedules as having a value of only $1,000.00. It was sold by Taylor Auction for $13,200.00.

are of little or no value is irrelevant to the issue of materiality.  Ridgway, 2011 WL at 5509156, *17, *citing* Beaubouef, 966 F.2d at 178.  "The recalcitrant debtor may not escape a. . .denial of discharge by asserting that the admittedly omitted. . .information concerned a worthless. . .holding; such a defense is specious.  Creditors are entitled to judge for themselves what will benefit, and what will prejudice, them."  Id., *quoting* Beaubouef, 966 F.2d at 178-79.

The case law is clear that a debtor's belief that his omitted assets are worthless is irrelevant to a finding of materiality.  Thus, Mr. Gainey's testimony that he omitted the Subject Property from his Original Schedules because he believed it was worthless has no merit.[31]  It is clear that the Subject Property related to the estate; it was property of the Gaineys and some of it was worth far more than the value stated in the schedules.  Indeed, the sale of the Subject Property grossed $23,000.00 and will be distributed to creditors where originally this case was thought to be a no-asset case.

For the reasons stated above, the Court finds that the UST has successfully proven each of the four (4) elements necessary to deny the Gaineys their discharge pursuant to § 727(a)(4)(A) by a preponderance of the evidence.  Since the UST has successfully met his burden under § 727(a)(4)(A), the Court need not consider his other grounds for denial of discharge, whether under § 727(a)(2)(A) or § 727(a)(2)(B).  Beaubouef, 966 F.2d at 179.

## Conclusion

Based on the foregoing, the Court concludes that the UST has successfully demonstrated by a preponderance of the evidence that the Gaineys knowingly and fraudulently, in or in connection with their case, made a false oath and should be denied their discharge pursuant to § 727(a)(4)(A).

---

[31] Test. of Mr. Gainey at 10:58:25.

Accordingly, the Court finds the Complaint is well-taken and should be granted. A separate order consistent with this opinion will be entered in accordance with FED. R. BANKR. P. 7054 and 9021.

SO ORDERED.

_____
Neil P. Olack
United States Bankruptcy Judge
Dated: February 17, 2012